Filed 9/2/21; Opinion following rehearing

**CERTIFIED FOR PARTIAL PUBLICATION**<sup>*</sup>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| BETH HARRIS et al.,<br><br>    Plaintiffs and Appellants,<br>v.<br><br>THOMAS DEE ENGINEERING CO., INC.,<br><br>    Defendant and Respondent. | A153106<br><br>(Alameda County<br>Super. Ct. No. RG14725868) |

In this asbestos case, Beth Harris and her children (Plaintiffs) appeal the trial court's grant of summary judgment in favor of defendant Thomas Dee Engineering Company (Thomas Dee). We conclude that the trial court erred in its evaluation of an expert declaration submitted by Plaintiffs in opposition to Thomas Dee's motion and that there is a triable issue whether Thomas Dee's refractory work on a United States Navy ship exposed decedent Michael Harris to asbestos. Accordingly, we reverse the grant of summary judgment.[1]

---

<sup>*</sup> Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III.

[1] In a separate order filed the same day, the trial court granted summary judgment in favor of defendant Triple A Machine Shop, Inc. In June 2019, this court reversed that order. (*Beth Harris et al. v. Triple A Machine Shop, Inc. et al.* (June 26, 2019, A153794) [nonpub. opn.] (*Triple A Machine Shop*).) The present appeal was stayed between February 2019 and April 2021 during Thomas Dee's Chapter 11 bankruptcy proceeding.

Mr. Harris was diagnosed with mesothelioma in March 2014. Two months later, he and his wife Beth Harris filed a personal injury complaint against numerous defendants alleging causes of action for negligence, strict liability, and loss of consortium. Mr. Harris passed away in October 2014. In July 2015, Mrs. Harris and her children amended the complaint to assert wrongful death and survival claims.

In June 2017, Thomas Dee moved for summary judgment on the issue of exposure. The motion stated, "This motion for summary judgment is made . . . on the grounds that the undisputed evidence establishes that plaintiffs are unable to establish the essential element of causation in that plaintiffs are unable to establish that plaintiffs' decedent was exposed to asbestos by an act or omission of [Thomas] Dee as alleged in the complaint. Because plaintiffs will be unable to establish any causal connection between plaintiffs' injuries and [Thomas] Dee's claimed operations as a boiler refractory contractor, plaintiffs' claims fail as a matter of law." Thomas Dee also moved for summary adjudication on strict liability and punitive damages issues.

Plaintiffs' claims arise out of Mr. Harris's alleged exposure to asbestos while he served in the U.S. Navy, specifically during repairs aboard the U.S.S. San Jose at the Triple A Machine Shop in San Francisco during Fall 1973. From August 1973 to May 1974, Mr. Harris worked on the U.S.S. San Jose as a hull maintenance technician. Mr. Harris's duties included maintaining and repairing the ship's fire system, which ran through the entire ship. In addition to his daily shift working as a hull technician, Mr. Harris was responsible for " 'standing watch ' " four hours about every other

---

[2] Portions of this background summary are taken from this court's decision in *Triple A Machine Shop.*

2

day.  His watch duties required him to " 'patrol every part of the ship' " to check for leaks and fires, among other things.

Thomas Dee is a contractor that works with "refractory brick, mortar and castable cement situated on the inside of boilers."  Thomas Dee performed repairs on boilers aboard the U.S.S. San Jose during the Fall 1973 repair period.  The first part of the job required Thomas Dee to " 'tear out' " the existing insulation and refractory material.  Plaintiffs' expert opined that the "approximately 200 feet of insulation block removed from the three boilers . . . more likely than not contained asbestos."

During the Fall 1973 repairs, Mr. Harris witnessed non-Navy personnel performing work aboard the ship.  Mr. Harris testified he worked in the boiler room and also saw other people working in the boiler room.  He did not see anyone working on the boilers.

William Ewing, a certified industrial hygienist, was Plaintiffs' expert witness regarding asbestos exposure.  In his deposition, he was asked about Mr. Harris's testimony that he did not see any boiler work performed on the U.S.S. San Jose.  Mr. Ewing testified, "If he wasn't present when the work was done, then I don't think there'd be any issue regarding any exposure." Despite that testimony, in a declaration submitted by Plaintiffs in opposition to the summary judgment motion, Mr. Ewing opined that Mr. Harris "did not need to be present at the exact time that the insulation block was being removed, swept up, and/or installed by Thomas [Dee] workers to be exposed." Instead, the removal of the asbestos-containing refractory materials from the boilers would have exposed Mr. Harris to asbestos whenever he was in the boiler room because asbestos fibers can remain suspended for up to 80 hours before settling out of the air and because the fibers can be continuously re-suspended through a phenomenon known as "re-entrainment."  Mr. Ewing

3

stated, "This cycle of re-suspension is well-documented and is generally accepted in the industrial hygiene field. . . . There is near universal agreement that asbestos fibers persist in the environment almost indefinitely and thus can represent a continuous potential source of exposure when present in buildings or other enclosed spaces."

In moving for summary judgment, Thomas Dee argued that, because Mr. Harris testified he did not see anyone working on the boilers, and, because Plaintiffs' expert testified Mr. Harris would not have been exposed to asbestos if he was not present when the work was being done, summary judgment should be granted. On reply, it argued Mr. Ewing's declaration about the re-entrainment phenomenon had to be disregarded because it contradicted his deposition testimony and because an expert may not testify to opinions not disclosed during his or her deposition.

Following a hearing, the trial court granted Thomas Dee's motion for summary judgment. The court's order states: "Plaintiffs' discovery responses do not specify any facts suggesting that they can produce admissible evidence that [Mr. Harris] was in the boiler room in which the ship's boilers were located, and where [Thomas] Dee would have performed its refractory work, while employees of [Thomas] Dee were manipulating asbestos-containing refractory materials, or at any specific time shortly after such work when such fibers might still be subject to exposure." With respect to Mr. Ewing's declaration, the court stated that it "rejects plaintiffs' attempt to create a factual issue by offering [their expert's] 're-entrainment' theory, disclosed in his declaration submitted in opposition to the instant motion. The declaration offers a new, previously not disclosed opinion that is contradicted by his deposition testimony." The court did not address Thomas Dee's

4

summary adjudication issues, which were rendered moot by the grant of summary judgment.

The trial court entered judgment in favor of Thomas Dee. The present appeal followed.

DISCUSSION

Plaintiffs argue that the trial court erred in refusing to give weight to their expert's declaration and that the declaration demonstrates there is a triable issue whether Thomas Dee's activities exposed Mr. Harris to asbestos. We agree.

I.     *Governing Law and Standard of Review*

Summary judgment is appropriate "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)[3] "[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law…. There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fns. omitted (*Aguilar*).) In ruling on the motion, the court must draw all reasonable inferences from the evidence in the light most favorable to the opposing party. (*Id.* at p. 843.)

"The defendant is not required conclusively to negate an element of the plaintiff's cause of action. The defendant need only show the plaintiff cannot establish at least one element of the cause of action, such as by showing the

---

[3] All undesignated statutory references are to the Code of Civil Procedure.

plaintiff does not possess, and cannot reasonably obtain, needed evidence." (*Weber v. John Crane, Inc.* (2006) 143 Cal.App.4th 1433, 1438.) The burden then shifts to the plaintiff to show a triable issue of material fact exists. (§ 437c, subd. (p)(2).) "The plaintiff . . . shall not rely upon the allegations . . . of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . ." (*Ibid.*) We review a decision on a summary judgment motion de novo. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 (*Saelzler*).)

II. *The Trial Court Erred In Declining to Give Any Weight to Mr. Ewing's Declaration*

As noted previously, the trial court "reject[ed] plaintiffs' attempt to create a factual issue by offering" Mr. Ewing's declaration in opposition to Thomas Dee's summary judgment motion, because the re-entrainment theory of exposure was not disclosed in the expert's earlier deposition and because it was in conflict with his deposition testimony.[4] The trial court erred.

We first reject Thomas Dee's contention that the trial court properly disregarded[5] Mr. Ewing's declaration because the re-entrainment theory of exposure was not disclosed in his deposition. Thomas Dee relies on the decision in *Jones v. Moore* (2000) 80 Cal.App.4th 557, which states, "When an

---

[4] The trial court also stated elsewhere in its decision that there was no "factual foundation" for the re-entrainment theory. Thomas Dee suggests the lack of foundation was the absence of testimony Mr. Harris was in the boiler room at a specific time after performance of Thomas Dee's work, but the re-entrainment theory as described in Mr. Ewing's declaration did not require such evidence.

[5] Thomas Dee asserts the trial court "excluded" Mr. Ewing's declaration. As explained below (pp. 10-11, *post*), the more accurate characterization of the trial court's ruling is that the court admitted, but then disregarded or gave no weight to the declaration in determining whether there is a triable issue of fact.

expert deponent testifies as to specific opinions and affirmatively states those are the only opinions he intends to offer at trial, it would be grossly unfair and prejudicial to permit the expert to offer additional opinions *at trial*." (*Id.* at p. 565 (italics added).) *Jones* and similar cases stand for the proposition that "a party's expert may not offer testimony at trial that exceeds the scope of his deposition testimony if the opposing party has no notice or expectation that the expert will offer the new testimony, or if notice of the new testimony comes at a time when deposing the expert is unreasonably difficult." (*Easterby v. Clark* (2009) 171 Cal.App.4th 772, 780, italics omitted.) But here we are concerned with an expert's opinions in a declaration in opposition to summary judgment, not trial testimony.[6]

We recognize that in evaluating a motion for summary judgment the court must consider only those declarations that set forth evidence admissible at trial. (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 541 (*Perry*).) However, Thomas Dee construes *Perry* too broadly. There, the Supreme Court stated it was of "determinative importance" that the summary judgment statute provided that declarations " 'shall set forth admissible evidence.' " (*Id.* at p. 541, quoting § 437c, subd. (d).) The court concluded expert declarations could not be considered on summary judgment where the experts' testimony would be inadmissible at trial because they had not been disclosed within the statutory time for exchanging expert witness information. (*Id.* at pp. 542-543.) In *Perry*, the party opposing summary judgment could have sought statutory relief from its failure to disclose, but

---

[6] Thomas Dee mistakenly asserts that *McCoy v. Gustafson* (2009) 180 Cal.App.4th 56, applied *Jones* in the summary judgment context. Instead, the trial court there granted a motion in limine prohibiting an expert from offering an opinion at trial on a topic on which he did not opine during his deposition. (*Id.* at pp. 95–98.)

absent the granting of such relief the experts' testimony was barred under the express statutory language. (*Id.* at pp. 541-542; see also § 2034.300.)

In contrast, in the present case, Thomas Dee cites no statute that renders Mr. Ewing's testimony inadmissible at trial. Further, as Thomas Dee acknowledges, at trial the court has discretion to admit an opinion the expert did not disclose in his or her deposition. If appropriate notice of a new expert opinion is provided, the opinion may be admissible, and "the fact that an expert's testimony at trial differs from his deposition testimony goes to the expert's credibility; it does not, without some further evidence of prejudice to the opposing party, serve as ground for exclusion." (*Easterby v. Clark, supra,* 171 Cal.App.4th at p. 781.) That is, the testimony is *admissible* unless the determination is made at trial that admission of the testimony would be prejudicial. Thus, Mr. Ewing's testimony was not, at the time of the summary judgment motion, inadmissible at trial.

The California Supreme Court's recent decision in *Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, supports our conclusion that Thomas Dee misconstrues *Perry's* breadth. In *Sweetwater,* the court applied *Perry* in its analysis of the second prong of an anti-SLAPP motion, which is " 'a summary-judgment-like procedure.' " (*Sweetwater,* at p. 945.) *Sweetwater* noted that courts considering both summary judgment and anti-SLAPP motions may only rely on "evidence *potentially admissible* at trial presented in the proper form." (*Id.* at p. 945, italics added.) The court held that grand jury transcripts proffered by the plaintiff satisfied that requirement, drawing a comparison to the circumstances in *Perry*. (*Ibid.*) *Sweetwater* explained that in *Perry* "the failure to comply with the disclosure statute rendered the evidence incurably inadmissible at trial," while the case under consideration involved "evidence that is potentially admissible at

8

trial." (*Sweetwater,* at pp. 948–949.) The court observed that "there is no categorical bar to statements contained in the grand jury transcript and plea forms," and "there are no undisputed factual circumstances suggesting the evidence would be inadmissible at trial." (*Id.* at p. 949.) Further, *Sweetwater* cited with approval other cases that "support the distinction between evidence that *may be* admissible at trial and evidence that could *never* be admitted." (*Id.* at 948.) Like *Sweetwater* and those cases, in the present case there is no categorical bar to admission of the challenged aspects of Mr. Ewing's testimony, and there are no undisputed circumstances showing inadmissibility. Indeed, even if the re-entrainment theory was new, given that it was disclosed well before trial, there was little basis for the court below to conclude that the expert's opinion was "incurably inadmissible" at trial. Accordingly, *Perry* is distinguishable.

We also reject Thomas Dee's argument that the trial court's order was proper under the California Supreme Court's decision in *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1 (*D'Amico*), because the statements in Mr. Ewing's declaration regarding the re-entrainment theory of exposure contradicted his deposition testimony. In *D'Amico*, the court considered how to apply the "well-established rules governing summary judgment procedure"—in particular the proposition that doubts should be resolved in favor of the party opposing the motion—in a context where a party's discovery responses suggest " ' "there is no substantial issue to be tried." ' " (*Id.* at pp. 20–21.) The court reasoned that "when discovery has produced an admission or concession on the part of the party opposing summary judgment which demonstrates that there is no factual issue to be tried, certain of those stern requirements applicable in a normal case are relaxed or altered in their operation." (*Id.* at p. 21.) The court then quoted language from a prior court

of appeal decision, stating, " '[w]here . . . there is a clear and unequivocal admission by the plaintiff, himself, in his deposition' " and the plaintiff contradicts that admission in a subsequent declaration, " 'we are forced to conclude there is no *substantial* evidence of the existence of a triable issue of fact.' " (*Id.* at p. 21, quoting *King v. Andersen* (1966) 242 Cal.App.2d 606, 610.)

The *D'Amico* court explained its reasoning as follows: "As the law recognizes in other contexts [citation] admissions against interest have a very high credibility value.  This is especially true when, as in this case, the admission is obtained not in the normal course of human activities and affairs but in the context of an established pretrial procedure whose purpose is to elicit facts.  Accordingly, when such an admission becomes relevant to the determination, on motion for summary judgment, of whether or not there exist triable issues of *fact* (as opposed to legal issues) between the parties, it is entitled to and should receive a kind of deference not normally accorded evidentiary allegations in affidavits." (*D'Amico*, *supra*, 11 Cal.3d at p. 22.)

Thomas Dee asserts, "*D'Amico* stands firmly for the proposition that a declaration offered to directly controvert the declarant's deposition testimony is inadmissible." We disagree.  In *D'Amico*, the California Supreme Court did *not* hold that declarations contradicting discovery responses must be "excluded."  Rather, the court stated only that such declarations may be insufficient to create a triable issue of fact.  The trial court's order in the present case is consistent with this understanding of *D'Amico*.  Thus, the order does *not* state that the declaration is inadmissible.  Instead, the trial court declined to give the declaration any weight in its analysis of whether there is a triable issue of fact as to exposure.

Properly understood, *D'Amico* does not state a rule regarding the admissibility of evidence; instead, the case provides guidance in determining whether a declaration that contradicts prior discovery responses is sufficient to create a triable issue of fact.[7] This is relevant to our standard of review: "The existence of a triable issue of fact is a legal question that we review de novo." (*Brome v. The Department of the California Highway Patrol* (2020) 44 Cal.App.5th 786, 794; see also *Saelzler, supra*, 25 Cal.4th at p. 768.) Accordingly, regardless of the appropriate standard of review of evidentiary rulings on summary judgment, we review de novo the trial court's conclusion that, under *D'Amico*, Mr. Ewing's declaration was insufficient to establish a triable issue of fact.[8]

---

[7] To this limited extent we disagree with statements in prior published cases that may be read to suggest *D'Amico* states a rule regarding the admissibility of evidence. (See, e.g., *Taylor v. Financial Casualty & Surety, Inc.* (2021) ____ Cal.App.5th ____, ____ (2021 WL 3627529 at p. *7) [concluding declaration not "*inadmissible*" under *D'Amico*]; *Turley v. Familian Corp.* (2017) 18 Cal.App.5th 969, 983 (*Turley*) [stating, "applying *D'Amico* properly, courts have held that the court may exclude the evidence where the declaration and the discovery responses are 'contradictory and mutually exclusive' "]; *Ahn v. Kumho Tire U.S.A., Inc.* (2014) 223 Cal.App.4th 133, 143-144 (*Ahn*) [referring to the trial court's "evidentiary" ruling in "excluding the declaration"]; *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1120 ["most of plaintiff's declaration is inadmissible"].)

[8] We recognize that *Mackey v. Trustees of California State University* (2019) 31 Cal.App.5th 640 (*Mackey*), expressly held the abuse of discretion standard of review applied to the trial court's rulings on " 'evidentiary objections' " under *D'Amico*. (*Id.* at pp. 657, 659.) And at least two other decisions that viewed *D'Amico* as stating a rule regarding the admissibility of evidence acknowledged uncertainty regarding the standard of review on summary judgment. (*Turley, supra*, 18 Cal.App.5th at p. 978 [acknowledging debate regarding standard of review of evidentiary rulings, but stating result the same under either de novo or abuse of discretion standard]; *Ahn, supra*, 223 Cal.App.4th at p. 144 [same].) For the reasons stated above, we respectfully disagree with *Mackey's* conclusion that a trial court's ruling under *D'Amico* is

11

We also disagree with Thomas Dee's apparent suggestion that, even if *D'Amico* does not require the exclusion of a declaration, the decision does require that a trial court give *no* weight to portions of a declaration contradicting a declarant's deposition testimony in *any* respect. The court in *Scalf v. D. B. Log Homes, Inc.* (2005) 128 Cal.App.4th 1510, 1514, cautioned that, although "admissions of a party obtained through discovery receive an unusual deference in summary judgment proceedings, and, absent a credible explanation, prevail over that party's later inconsistent declarations[,] [citation] . . . later cases have cautioned that *D'Amico* should not be read 'as saying that admissions should be shielded from careful examination in light of the entire record.' "

In the present case, the contradiction between Mr. Ewing's declaration and his deposition testimony does not eliminate the declaration's evidentiary value.[9] The stated rationale for the *D'Amico* rule is that "admissions against interest have a very high credibility value." (*D'Amico*, *supra*, 11 Cal. 3d at p. 22.) And this is particularly true where a deponent testifies regarding a factual matter within his or her personal knowledge and arguably contradicts the testimony in a declaration. (See, e.g., *Turley*, *supra*, 18 Cal.App.5th at p. 983 [testimony regarding personal knowledge of types of gaskets used by mechanics]; *Ahn*, *supra*, 223 Cal.App.4th at p. 147 [factual disputes regarding trucking services agreement]; *Benavidez v. San Jose Police Dept.*

reviewed for abuse of discretion. In any event, we would reverse even if we were to review the trial court's decision under the deferential abuse of discretion standard: *D'Amico* provided neither a basis to exclude nor to entirely disregard the challenged testimony at the summary judgment stage.
[9] Plaintiffs dispute that Mr. Ewing's declaration contradicted his deposition testimony. We assume for purposes of this decision that the trial court did not err in that respect.

(1999) 71 Cal.App.4th 853, 861–862 [dispute as to what plaintiff told police officers and knew about officers' intentions]; *Mason v. Marriage & Family Center* (1991) 228 Cal.App.3d 537, 546 (*Mason*) [dispute as to date of injury]; *Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 482 [plaintiffs' admissions regarding loan terms], overruled on other grounds in *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1182.)[10]  In contrast, in the present case, Mr. Ewing's declaration relates a scientific theory that he apparently did not discuss in his deposition, and his statements in the declaration do not contradict any prior testimony regarding facts he observed.  (Cf. *Price*, at p. 482 [observing that, under *D'Amico*, "self-serving declarations of a party" cannot overcome "credible admissions on deposition"]; *Benavidez*, at pp. 862-863 [disregarding contradictory statements in a declaration and observing, "Either [the plaintiff] did not say anything or she asked to go to a shelter; either she thought the officers were staying to protect her or she thought they were leaving."].)

It is instructive to compare the present case with *Jacobs v. Fire Ins. Exchange* (1995) 36 Cal.App.4th 1258, which *did* apply *D'Amico* to disregard an expert's opinion that contradicted prior deposition testimony.[11]  That case

---

[10] Notably, in *Turley*, *Ahn*, and *Mason*, the courts still gave weight to the declarations at issue because there was no direct contradiction or because other evidence supported the credibility of the challenged declaration.

[11] Given that *D'Amico's* stated rationale is the special "deference" accorded to party "admissions against interest" (*D'Amico*, *supra*, 11 Cal.3d at p. 22), it is arguably appropriate to apply the decision less stringently when the declaration and prior deposition testimony is from a non-party.  Nevertheless, for purposes of the present appeal, we assume *D'Amico* properly can be applied to give no weight to a declaration by a non-party in appropriate circumstances.

was an insurance coverage action related to an assault, where applicability of a coverage exclusion turned on the willfulness of the assault. (*Jacobs,* at p. 1261.) The court stated it was proper to "disregard" an expert's declaration where the expert contradicted his prior deposition testimony about whether the assailant had " 'capacity to understand the nature and consequences of his actions.' " (*Id.* at p. 1270.) However, in that case, the expert's declaration disclosed no basis for the difference between the opinion offered during the deposition and in the declaration. (*Ibid.*) In contrast, in the present case, Mr. Ewing's declaration explained the difference in his opinion by referencing the re-entrainment theory, which he stated is widely accepted in the scientific community.

"Summary judgment is proper only if *all the papers* submitted on the motion show there are no genuine issues of material fact requiring a trial." (*Ahn*, *supra*, 223 Cal.App.4th at pp. 145–146.) In the present case, Mr. Ewing's declaration showed there was in fact a triable issue as to exposure under the re-entrainment theory, even if he neglected to mention that phenomenon during his deposition. Accordingly, unlike in *Jacobs*, the trial court was not presented with a declaration that flatly contradicted deposition testimony and provided no basis to conclude that the opinion expressed in the declaration was actually the valid one. *D'Amico* does not require a court to give no weight to a declaration "where there is a 'reasonable explanation for the discrepancy' or 'countenance ignoring other credible evidence that contradicts or explains that party's answers or otherwise demonstrates there are genuine issues of factual dispute.' " (*Mackey, supra,* 31 Cal.App.5th at p. 658; see also *Ahn*, at pp. 144–145 ["Courts have consistently refused to apply the *D'Amico* rule . . . when [other] evidence adduced on the motion credibly explains or contradicts a party's earlier admissions."]; *Mason*, *supra*, 228

14

Cal.App.3d at pp. 545–546 [declining to "ignore" plaintiff's declaration under *D'Amico* where "the trier of fact could reasonably conclude that the initial interrogatory response was . . . a simple mistake"].)

In the present case, it is for the ultimate factfinder to decide what weight to give Mr. Ewing's testimony regarding the re-entrainment theory in light of his deposition testimony.[12]  But the trial court erred in refusing to give the declaration *any* weight.

III.     *The Ewing Declaration Creates a Triable Issue Whether Thomas Dee's Work Exposed Mr. Harris to Asbestos*

"In the context of asbestos litigation, a plaintiff must demonstrate exposure to a defendant's product and biological processes from the exposure which result in disease. . . .  [T]he proper analysis is to ask whether the plaintiff has proven exposure to a defendant's product, of whatever duration, so that exposure is a possible factor in causing the disease and then to evaluate whether the exposure was a substantial factor." (*Lineaweaver v. Plant Insulation Co.* (1995) 31 Cal.App.4th 1409, 1415–1416.)  In the present case, Thomas Dee moved for summary judgment on the issue of exposure; accordingly, we do not address whether any exposure was a substantial factor in bringing about Mr. Harris's mesothelioma.  (See *Johnson v. ArvinMeritor, Inc.* (2017) 9 Cal.App.5th 234, 240 (*Johnson*).)  Proof of exposure requires "circumstantial evidence . . . sufficient to support a reasonable inference of exposure." (*Lineaweaver*, at p. 1420.)  "[A] plaintiff has no obligation to prove a specific exposure to a specific product on a specific date or time.  Rather, it

_____

[12] Thomas Dee may request an opportunity to further depose Mr. Ewing, and the discrepancy between his initial deposition testimony and his declaration may be the subject of cross-examination at trial.  We leave it to the discretion of the trial court to dictate the terms of any further discovery, including allocation of the expense of any additional deposition.

is sufficient to establish 'that defendant's product was definitely at his work site and that it was sufficiently prevalent to warrant an inference that plaintiff was exposed to it' during his work there." (*Turley, supra*, 18 Cal.App.5th at p. 985, quoting *Lineaweaver*, at p. 1420.)[13]

In moving for summary judgment, Thomas Dee relied on the deposition testimony of Mr. Ewing and Mr. Harris to argue there was no evidence it exposed Mr. Harris to asbestos. Most particularly, Thomas Dee relied on Mr. Harris's testimony that he did not observe anyone working on the boiler when he was in the boiler room on the U.S.S. San Jose and Mr. Ewing's testimony that, if Mr. Harris "wasn't present when the work was done, then I don't think there'd be any issue regarding any exposure."

Assuming without deciding that this evidence was sufficient to shift the burden to Plaintiffs (see *Aguilar, supra*, 25 Cal.4th at p. 850), the evidence presented in opposition to the motion creates a triable issue whether Thomas Dee exposed Mr. Harris to asbestos. First, Plaintiffs demonstrated there was a triable issue whether the refractory material removed by Thomas Dee contained asbestos. Specifically, Mr. Ewing's declaration stated that a bid estimate sheet prepared by Thomas Dee for brickwork repairs to three boilers on the U.S.S. San Jose referred to the removal of "approximately 200 feet of insulation block." And he opined that the "insulation block to be removed from the three boilers more likely than not contained asbestos." Thomas Dee points to deposition testimony in which Mr. Ewing admitted he was not sure whether the material contained asbestos, but that testimony is not

---

[13] We disagree with Plaintiffs' contention that the plaintiff in an asbestos case merely has to prove a *possibility* of exposure. Instead, as this court explained in *Johnson, supra*, 9 Cal.App.5th at p. 245, the plaintiff must prove a *probability* of exposure.

16

inconsistent with his averment that it likely *did* contain asbestos, based on his "review[] [of] safety and industrial hygiene literature concerning the use of asbestos[-]containing insulation block at worksites such as shipyards, ships and industrial applications" and his review of interrogatory responses from "insulation block manufacturers."

Next, as Thomas Dee apparently does not dispute, Plaintiffs presented evidence Mr. Harris worked in the boiler room in his capacity as a hull maintenance technician, in addition to being in the boiler room on watch. Under the re-entrainment theory of exposure, that gives rise to a reasonable inference of exposure, even absent evidence that Mr. Harris was present when Thomas Dee was removing refractory material from the boilers. As explained in Mr. Ewing's declaration, "There is near universal agreement that asbestos fibers persist in the environment almost indefinitely and thus can represent a continuous potential source of exposure when present in buildings or other enclosed spaces."

Thomas Dee argues that Plaintiffs cannot prove exposure if there is no evidence that Mr. Harris was present when Thomas Dee was removing refractory material from the boilers. Thus, Thomas Dee contends, "the decedent's testimony creates the inference that there was no boiler work ongoing when he was present. Importantly, [Plaintiffs'] certified industrial hygienist, William Ewing stated at deposition [that] if decedent was not present when work was performed, he would not have been exposed to asbestos." However, because Mr. Ewing's declaration regarding the re-entrainment theory of exposure must be considered in determining whether there is a triable issue, Thomas Dee's argument fails.[14]

---

[14] Thomas Dee requests that this court also consider 21 other evidentiary objections it presented below that it asserts the trial court did not reach.

17

Viewed in the light most favorable to Plaintiffs (*Aguilar*, *supra*, 25 Cal.4th at p. 843), the evidence supports a reasonable inference that Thomas Dee workers disturbed asbestos-containing materials as part of their repair work on the U.S.S. San Jose in Fall 1973, and that Mr. Harris was exposed to it due to re-entrainment of the asbestos fibers. It is, of course, for the jury to decide whether the evidence of exposure is sufficient to prevail at trial, but at summary judgment we must resolve " 'any evidentiary doubts or ambiguities in plaintiff's favor.' " (*Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 100; see also *Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 839 [" 'Any doubts about the propriety of summary judgment . . . are generally resolved *against* granting the motion, because that allows the future development of the case and avoids errors.' "].)

## DISPOSITION

We reverse the order granting summary judgment in favor of Thomas Dee. Plaintiffs are entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

---

However, "[I]t is not appropriate to incorporate by reference, into a brief, points and authorities contained in trial court papers, even if such papers are made a part of the appellate record." (*Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1301, fn. 2; accord *York v. City of Los Angeles* (2019) 33 Cal.App.5th 1178, 1188, fn. 4.) Thomas Dee also moved below for summary adjudication on two issues, but the company has made no request of this court with respect to those issues on appeal.

18

_____
SIMONS, ACTING P.J.

We concur:



_____
BURNS, J.



_____
RODRIGUEZ, J.*



A153106

_____

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19

Alameda County Superior Court, Case No. RG14725868

Trial Judge: The Honorable Brad Seligman

The Arkin Law Firm, Sharon J. Arkin; Levin Simes LLP, William Levin and Timothy Pearce, for Plaintiffs and Appellants.

WFBM, LLP, Michael T. McCall, Margaret F. Mahaffey, and Anne C. Gritzer, for Defendant and Respondent.